# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| JOHN J. CARROLL, | ) | CASE NO. 7:17CV00502 |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| DIRECTOR, V.D.O.C., | ) | By: Norman K. Moon |
|     Respondent. | ) | Senior United States District Judge |

John J. Carroll, a Virginia inmate proceeding *pro se,* filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the validity of his confinement on a judgment by the Warren County Circuit Court. Respondent filed a motion to dismiss Carroll's § 2254 petition, and Carroll responded, making the matter ripe for disposition. After review of the record, I dismiss the petition.

## I.     Background

On November 12, 2013, the Warren County Circuit Court entered final judgment, pursuant to a plea agreement, convicting Carroll of aggravated sexual battery and indecent liberties. The trial court imposed a five year active sentence. Carroll's direct and collateral appeals were unsuccessful.

On November 3, 2017, Carroll timely filed the present petition, stating two claims:

1. The trial court erred in refusing to suppress the petitioner's custodial statements to police which were made without *Miranda*[1] warnings and without a waiver; and

2. Trial counsel was ineffective for failing to (a) object or impeach the officer's inconsistent testimony during the motion to suppress and (b) allow the petitioner to testify to rebut the testimony of the officer.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Respondent moves to dismiss Carroll's claims as without merit, and Carroll responded to the motion.

In his response to the motion to dismiss, Carroll appears to allege additional ineffective assistance claims:

3. Counsel failed to recognize and object to the alleged victim's inadmissible statements;
4. Counsel failed to investigate the DNA evidence;
5. Counsel failed to argue that Carroll's confession was inadmissible because Carroll was on drugs at the time of the interview; and
6. Counsel failed to investigate the case more thoroughly.

Resp. in Opp. of Mot. to Dismiss 11-16, ECF No. 21. Even though Carroll did not request permission to file an amended petition, I address his new claims. *See* 28 U.S.C. § 2254(d). For relief, Carroll seeks vacation of his convictions and a new trial.

## II. Standards of Review

To obtain federal habeas relief, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under 28 U.S.C. § 2254(d), however, the federal habeas court may not grant a writ of habeas corpus based on any claim that a state court decided on the merits unless that adjudication:

(1) [R]esulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) [R]esulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). Under this standard, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded

2

jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

To state a constitutional claim for ineffective assistance of counsel, a petitioner must satisfy the two-pronged *Strickland v. Washington* test by showing (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense." 466 U.S. 668, 687 (1984). "Judicial scrutiny of counsel's performance must be highly deferential," *Id.* at 689, and counsel is "permitted to set priorities, determine trial strategy, and press those claims with the greatest chances of success." *United States v. Mason*, 774 F.3d 824, 828 (4th Cir. 2014). When reviewing a *Strickland* claim under the AEDPA, the court's review is doubly deferential. *See Harrington*, 562 U.S. at 105.

For *Strickland's* first prong, a petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105 (quoting *Strickland*, 466 U.S. at 690). For the second prong, a petitioner must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In the guilty plea context, the prejudice inquiry "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* Further, the

"resolution of the 'prejudice' inquiry will depend largely on whether the [petitioner's argument underlying the ineffective assistance claim] likely would have succeeded at trial." *Id.*

### III. Discussion

In Claim 1, Carroll contends that the trial court erred in denying his suppression motion, arguing officers obtained his confession in violation of his Fifth Amendment rights under *Miranda*. Specifically, Carroll challenges the state court's determination that the interrogation was not "custodial." In the motion to dismiss, the respondent argues that Carroll's *Miranda* claim is incognizable under *Stone v. Powell*, 428 U.S. 465 (1976). The *Stone* doctrine is a procedural bar that precludes federal habeas review of Fourth Amendment search and seizure claims if "the State has [previously] provided an opportunity for full and fair litigation." *Grimsley v. Dodson*, 696 F.2d 303, 304 (4th Cir. 1982). However, the Supreme Court has specifically addressed *Stone*'s application to *Miranda* claims: "*Stone*'s restriction on the exercise of federal habeas jurisdiction does not extend to a state prisoner's claim that his conviction rests on statements obtained in violation of the safeguards mandated by *Miranda*." *Withrow v. Williams*, 507 U.S. 680, 682 (1993). While the respondent's argument fails, I will review the record to determine whether petitioner's claim has merit. *See* 28 U.S.C. § 2254(d).

*Miranda* "does not apply outside the context of the inherently coercive custodial interrogations for which it was designed." *Roberts v. United States*, 445 U.S. 552, 560 (1980). To determine "custody" for *Miranda* purposes, two discrete inquiries are essential: (1) "what were the circumstances surrounding the interrogation," and (2) "given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995); *see also Alvarado*, 541 at 663.

Custodial circumstances "are thought generally to present a serious danger of coercion." *Howes v. Fields*, 565 U.S. 499, 508-09 (2012). "The warnings protect persons who, exposed to such interrogation without the assistance of counsel, otherwise might be unable to make a free and informed choice to remain silent." *Roberts*, 445 U.S. at 560-61 (citations omitted). However, *Miranda* warnings are not required "simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect." *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). Instead, *Miranda* mandates warnings if the Court can objectively determine that there was "a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Alvarado*, 541 U.S. at 663.

"Fidelity to the doctrine announced in *Miranda* requires that it be enforced strictly, but only in those types of situations in which the concerns that powered the decision are implicated." *Howes*, 565 U.S. at 508-09 (internal quotation marks and citation omitted). Lastly, "[v]oluntary confessions are not merely a proper element in law enforcement, they are an unmitigated good, essential to society's compelling interest in finding, convicting, and punishing those who violate the law." *Maryland v. Shatzer*, 559 U.S. 98, 108 (2010) (internal quotation marks and citations omitted).

Carroll argues at length that the interrogation was custodial because: (1) the investigation occurred in a non-public room behind several locked doors; (2) the door was closed during the questioning; (3) the interrogation was related to a criminal investigation; (4) the investigation was "lengthy"; (5) when Carroll asked for a break, it was delayed twice; and (6) the investigating officer, Detective Jason Lethcoe ("Det. Lethcoe"), made various statements to Carroll that allegedly indicated custody. Specifically, Det. Lethcoe told Carroll the following: he knew Carroll was lying, Carroll was "irritating" for refusing to confess, Det. Lethcoe was "trying not

5

to come unhinged," "If you ask for a lawyer, this interview never happened," and if Carroll left, Carroll was "done," Carroll would see "a different side of [Det. Lethcoe]," and the rules would change.

The trial court discussed *Miranda* extensively. *See* State Habeas R. 116-29, *Carroll v. Gilmore*, No. 160806 (Va. Aug. 3, 2017).[2] After weighing the factors, the trial court specifically acknowledged that the issue was a "close call," but found no *Miranda* violation. State Habeas R. 134. On direct review, the Court of Appeals of Virginia[3] scrutinized the trial court's decision and agreed:

> Here, the trial court properly concluded appellant failed to establish that his *Miranda* rights were violated when Detective Jason Lethcoe interviewed him. Appellant appeared at the police station voluntarily for the interview, and Detective Lethcoe immediately advised him that he was free to leave at any time. Detective Lethcoe was the only police officer[4] in the room with appellant, and appellant was not physically restrained or placed in a locked room. Although Detective Lethcoe shut the door to the room, he told appellant he was doing so only for the sake of privacy. Appellant was not restrained and had free access to his cell phone and his belongings. The interview lasted approximately two and a half hours. During that time, Detective Lethcoe told appellant on at least two occasions he was not being arrested that day.
> After listening to appellant's initial account of what happened between him and his three-year-old stepdaughter, Detective Lethcoe told appellant he had been trained to assess when individuals were lying and that "that's what irritating me." In response to appellant stating he could not recall many details about the incident with his stepdaughter, Detective Lethcoe also stated, "Bullshit. You remember. Stop."
> Detective Lethcoe's demeanor, however, was calm when he made these remarks. Detective Lethcoe remained seated during the entire interview, and his

---

[2] The record cite is to the June 11, 2013 plea hearing in the trial court. The transcript of the hearing is embedded in Carroll's state habeas petition.

[3] The Supreme Court of Virginia summarily denied Claim 1 on direct appeal and Carroll did not raise the claim in his state habeas proceeding. Therefore, the federal habeas court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (reaffirming the essence of *Ylst v. Nunnemaker*, 501 U.S. 797 (1991)). In Carroll's case, the Court of Appeals of Virginia's decision is the last related state court decision providing a relevant rationale.

[4] A female social worker was also present.

body language and deportment were not intimidating. While Detective Lethcoe clearly communicated to appellant that he did not believe appellant was telling the truth, and occasionally raised his voice or banged his hand on the table in frustration, the overriding dynamic between appellant and Detective Lethcoe remained peaceful. Detective Lethcoe repeatedly told appellant he could help him if he told the truth, and implied he could help appellant receive more lenient treatment if he were forthcoming. When Detective Lethcoe left the interview room briefly, appellant described Detective Lethcoe as a "good guy" to the social worker.

As appellant was on the verge of confessing, he took a phone call on his cell phone and placed a phone call to his sister. Appellant explained to Detective Lethcoe that his sister would be giving him a ride home. When appellant spoke to his sister, he told her he was "almost finished." After appellant confessed, he thanked Detective Lethcoe, left the building, and went home with his sister.

A suspect's "voluntary appearance at a police station, where he is immediately advised that he is not under arrest and from which he leaves without hindrance at the end of an interview, indicates that he is not in custody or otherwise deprived of his freedom of action in any significant way." *Garrison v. Commonwealth*, 36 Va. App. 298, 309, 549 S.E.2d 634, 640 (2001) (brackets, internal quotations, and citations omitted); *cf. Wass v. Commonwealth*, 5 Va. App. 27, 34, 359 S.E.2d 836, 840 (1987) (defendant in custody where he was "confronted by at least twelve officers, all armed, some of whom were carrying shotguns, arriving in town trucks and a helicopter[,]" the officers parked at the driveway gate, surrounded his house, and threatened to kill one of defendant's dogs). While Detective Lethcoe informed appellant that he was the sole suspect in connection with the sexual assault, the detective's focus on appellant, standing alone, did not convert the interview into a custodial interrogation. *See, e.g., Stansbury v. California*, 511 U.S. 318, 325 (1994) ("Even a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself, dispositive of the custody issue . . . .")[.]

Given these facts, we conclude that appellant's interview with Detective Lethcoe was not a custodial interrogation. Accordingly, the trial court properly denied the motion to suppress.

*Carroll v. Commonwealth*, No. 2045-13-4, slip op. at 1-4 (Va. Ct. App. July 16, 2014), ECF No. 13-1.

Carroll fails to demonstrate that the state court's decision was objectively unreasonable. Carroll is correct that building security, length of the interview, whether the interviewee is allowed a break, and officer statements are relevant to the *Miranda* analysis. *See Shatzer*, 559 U.S. at 112 (The "freedom-of-movement test identifies only a necessary and not a sufficient

condition for *Miranda* custody"; the test is not accorded "talismanic power."); *Bucio v. Sutherland*, 674 F. Supp. 2d 882, 888 (S.D. Ohio 2009) (officers not offering interviewee a break relevant but not dispositive to finding of custody); *United States v. Akale*, No. 15-cr-153, 2015 WL 9947949, at *15 (D. Minn. Dec. 21, 2015) (interviewee's comfort in requesting a break relevant to determination that he was not in custody); *United States v. Cavazos*, 668 F.3d 190, 195 (5th Cir. 2012) (officer statements that the interview was "non-custodial" are relevant to *Miranda* analysis but not a "talismanic factor").[5] However, the cited circumstances, even when combined, are not dispositive. For example, in *Muegge*, the Eleventh Circuit refused to find an interrogation custodial when the interviewee was escorted through locked doors and the interview lasted two-and-a-half hours. 225 F.3d at 1269, 1271. The court concluded that, because the interviewee arrived voluntarily, was told he could leave at any time, was not physically restrained, and was not arrested until later, "a reasonable man would not have felt a restraint on his freedom of movement of the degree associated with a formal arrest." *Id.* (citation and internal quotation marks omitted).

Here, the trial court heard argument and discussed the individual facts of the case. The circuit court acknowledged some facts weighed in favor of finding the interrogation custodial, but, after analyzing all of the circumstances, concluded the interview was not custodial. The

---

[5] *See also Howes*, 565 U.S. at 502 (declining to find custody when interviewee passed through a locked door because he was also told he was told he was free to leave and return to his cell); *United States v. Ambrose*, 668 F.3d 943, 957 (7th Cir. 2012) (holding that "[t]he security requirements of the police station were not enough to transform a non-custodial voluntary interview into a custodial one" even though "building security was such that [the interviewee] was not allowed to move throughout the building without one of the officers escorting him," including bathroom trips); *United States v. Muegge*, 225 F.3d 1267, 1271 (11th Cir. 2000) ("question[ing] in a secure facility . . . does not necessarily make the interrogation custodial"); *United States v. Red Star*, No. CR-07-65-BLG-JDS, 2007 WL 3561872, at *2 (D. Mont. Nov. 15, 2007) ("The fact that [the interviewing officer's] office was somewhat secure does not require a finding that Defendant was in custody or that his statements were involuntary.").

court specifically noted Carroll voluntarily went to the police station, Det. Lethcoe advised Carroll multiple times that he was free to leave, Carroll was not physically restrained, the interrogation was with only one law enforcement officer, Det. Lethcoe was not overly intimidating or coercive, and Det. Lethcoe told Carroll that Carroll would go home that night. *Mathiason*, 429 U.S. at 495 (asserting that *Miranda* warnings are not required when a suspect voluntarily accompanies the police to the police station, answers questions, and then is allowed to leave); s*ee also Alvarado*, 541 U.S. at 656-66 (upholding state court determination that the respondent, a juvenile, was not in custody during his two-hour interview, despite the fact that he was dropped off at the police station by his parents at police request and was not told that he was free to leave); *United States v. Quinn*, 815 F.2d 153, 157-61 (1st Cir. 1987) (determining no custody despite the presence of five police officers). Therefore, the state court's adjudication was not contrary to, or an unreasonable interpretation of, federal law, or an unreasonable determination of facts, and I will dismiss Claim 1.

In Claim 2, Carroll asserts that counsel was ineffective regarding the motion to suppress for (a) failing to object to or impeach Det. Lethcoe's inconsistent testimony and (b) failing to allow Carroll to testify to rebut Det. Lethcoe's testimony. Specifically, Carroll alleges that counsel failed to explore and rebut Det. Lethcoe's testimony regarding: conversations with Carroll after the interrogation DVD ended, whether there were locks on the doors leading to the interrogation room, whether Lethcoe had enough evidence to secure an arrest warrant, and whether Carroll was on probation.

On habeas review, the Supreme Court of Virginia rejected Carroll's argument:

> [The] petitioner's subjective thoughts or feelings regarding whether he was free to leave the interview were irrelevant to whether he experienced custodial interrogation requiring a *Miranda* warning. *See Dixon v. Commonwealth*, 270 Va. 34, 40, 613 S.E.2d 398, 401 (2005) ("[T]he subjective perspective of either

9

> the suspect or the interrogating police officer has no bearing on the issue whether the suspect was 'in custody' at the time he was questioned by the police.").
>
> * * *
>
> [T]he record, including transcripts of June 4 and 11, 2013 hearings, demonstrates [counsel] argued at length how the circumstances of petitioner's interview constituted custodial interrogation because a reasonable person in petitioner's position would not have felt free to leave. Whether the detective who conducted the interview believed petitioner could have left of his own accord, thought there was enough evidence to arrest petitioner, or knew petitioner was on probation were irrelevant to whether petitioner should have received a *Miranda* warning. *See Dixon*, 270 Va. at 40, 613 S.E.2d at 401 (explaining when a *Miranda* warning is required and that the seizing officer's perception and personal knowledge have no bearing on the issue); *see also United States v. Parker*, 262 F.3d 415, 419 (4th Cir. 2001) ("Custody determinations do not depend on the subjective views of either the interrogating law enforcement officers or of the person being questioned, but depend instead [on] the objective circumstances of the interrogation."). Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, he would have pleaded not guilty, would have proceeded to trial, and the outcome of the proceedings would have been different. *Hill*, 474 U.S. at 59.

*Carroll v. Gilmore*, No. 160806, slip op. at 11-13 (Va. Aug. 3, 2017), ECF No. 13-2. I agree with the state court's determination.

First, Carroll's unrecorded statements had no bearing on the *Miranda* issue because he only alleges that his statements reflected his personal feelings of fearfulness and confusion. *See Stansbury v. California*, 511 U.S. 318, 323 (1994) ("[T]he initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned."). For the same reason, whether or not Carroll was on probation does not affect the objective *Miranda* analysis. *Id.*; *see also United States v. Salyers*, 160 F.3d 1152, 1159 (7th Cir. 1998) (holding that defendant's military experience and the fact that he was "trained to obey orders from those in authority" was irrelevant because "[t]he test is not whether the *particular defendant* thought he was free to go,

but whether a 'reasonable person' in the circumstances would have believed so") (emphasis added).[6]

Second, Carroll fails to demonstrate that counsel was ineffective for failing to argue that Det. Lethcoe required a warrant. Carroll arrived at the police station voluntarily and made voluntary statements to Det. Lethcoe; therefore, Det. Lethcoe did not require a search or arrest warrant to receive voluntary statements. *United States v. Lynn*, 37 F.3d 1496 (Table), 1994 WL 556873, at *2 (4th Cir. 1994) (refusing to suppress voluntary statements when they "were not obtained in the course of an illegal or otherwise improper search, nor were they the product of custodial interrogation"). Counsel cannot be ineffective for failing to raise a meritless argument. *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument [] cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

---

[6] Several lower courts have held that the objective test requires consideration of discernible, unique characteristics of the suspect, such as young age, blindness, language skills, or mental retardation. *See United States v. IMM*, 747 F.3d 754, 766 (9th Cir. 2014) (appearing to apply test as a "reasonable twelve year old child"); *Thatsaphone v. Weber*, 137 F.3d 1041 (8th Cir. 1998) ("a suspect's language skills may be relevant to the 'in custody issue'" despite the inquiry's supposed objectivity); *J.D.B. v. North Carolina*, 564 U.S. 261, 278 (2011) (agreeing that "some undeniably personal characteristics—for instance, whether the individual being questioned is blind—are circumstances relevant to the custody analysis"); *People v. Braggs*, 810 N.E.2d 472, 507 (2004) (recognizing that "age, intelligence, and mental makeup of the accused—and an investigating officer's awareness and exploitation of those characteristics . . . are analytically intertwined with the reasonable-person prong of the custodial question"). However, it appears that no federal court has ever held that probation status was a relevant circumstance in a *Miranda* inquiry. Counsel is not required to pursue every perceivable argument, or predict future changes in law. *See Evitts v. Lucey*, 469 U.S. 387, 394 (1985) (asserting that the right to counsel does not require an attorney to raise every nonfrivolous argument); *Wajda v. United States*, 64 F.3d 385, 388 (8th Cir. 1995) (counsel not ineffective for failure to anticipate changes in the law). Therefore, the state court's determination that counsel was not ineffective for failing to argue that Carroll's probationary status was relevant to the objective custody test was not contrary to, or an unreasonable interpretation of, federal law.

11

Lastly, Carroll seeks to invoke his Fifth Amendment right to counsel under *Miranda*: "[During the unrecorded discussion], the topic of Carroll feeling his need for an attorney came up." Pet'r's Resp. 12, ECF No. 21-1. However, the Supreme Court has "never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than 'custodial interrogation.'" *McNeil v. Wisconsin*, 501 U.S. 171, 182 n.3 (1991). Carroll fails to demonstrate that he was in custody during the interview; therefore, the reference to his lawyer at that time cannot be considered an invocation of *Miranda* rights. *Id.*; s*ee also Michigan v. Jackson*, 475 U.S. 625, 629 (1986) ("The Fifth Amendment protection against compelled self-incrimination provides the right to counsel at *custodial* interrogations.") (emphasis added); *United States v. Hines*, 963 F.2d 255, 256 (9th Cir. 1992). Once again, counsel need not pursue meritless claims. *See Kimler*, 167 F.3d at 893. Accordingly, the state court's ruling was not contrary to, or an unreasonable interpretation of, federal law, or an unreasonable determination of facts, and I will grant the motion to dismiss as to Claim 2.

In Claim 3, Carroll argues that counsel failed to recognize and object to the victim's statements as inadmissible hearsay under the excited utterance exception. However, Carroll fails to proffer any evidence demonstrating that the statements were inadmissible and his self-serving and conclusory statements are not entitled to belief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, Claim 3 is without merit.

In Claim 4, Carroll alleges that counsel failed to investigate potential DNA evidence. Carroll has not proffered evidence showing what the investigation would have discovered, which is fatal to his claim. *See Beaver v. Thompson*, 93 F.3d 1186, 1195 (4th Cir. 1996) (petitioner must proffer "what favorable evidence or testimony would have been produced" by investigation). Therefore, Claim 4 is without merit.

In Claim 5, Carroll contends that counsel failed to argue that his confession was involuntary because he was under the influence of marijuana and had "unknowingly" ingested Ativan[7] prior to the interrogation. On habeas review, the Supreme Court of Virginia ruled:

> [T]he record, including video of petitioner's interview with the detective and a social worker, demonstrates [counsel] could have reasonably concluded there was no chance of succeeding on a claim that petitioner's statement was involuntary and that there is no reasonable probability the trial court would have so found. It is well established that "statements obtained during custodial interrogation while an accused is intoxicated is not *per se* involuntary," *Stockton v. Commonwealth*, 227 Va. 124, 140, 314 S.E.2d 371, 381 (1984), and petitioner's presentation during the approximately two and one half hour interview gave no indication he was "so intoxicated that his confession was not the product of his rational intellect and free will." *Boggs v. Bari*, 892 F.2d 1193, 1198 (4th Cir. 1989). Instead, petitioner cogently answered the detective's questions, asked numerous reciprocal questions, spoke frequently about his personal life, made jokes, and repeatedly evidenced he appreciated the consequences, both legal and personal, of the conduct he was admitting. Although petitioner was overcome by emotion at points, his reactions were appropriate to the gravity of the circumstances. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, he would have pleaded not guilty, would have proceeded to trial, and the outcome of the proceedings would have been different. *Hill*, 474 U.S. at 59.

*Carroll v. Gilmore*, No. 160809, slip op. at 13. Beyond conclusory and self-serving statements, Carroll has not presented any evidence that his confession was rendered involuntary by his alleged drug use. *See Iqbal*, 556 U.S. at 678. Therefore, he fails to demonstrate that the state court's adjudication was contrary to, or an unreasonable interpretation of, federal law, or an unreasonable determination of facts, and I will grant the motion to dismiss as to Claim 5.

Lastly, in Claim 6, Carroll avers that counsel failed to properly investigate the case beyond the motion to suppress. Once again, Carroll fails to proffer evidence showing what the investigation would have discovered, which is fatal to his claim. *See Beaver*, 93 F.3d at 1195. Therefore, Claim 6 is without merit.

---

[7] Ativan is a medication used to treat anxiety.

## IV.    Conclusion

As discussed above, I will **GRANT** respondent's motion, although not for the all reasons it argues, and **DISMISS** Claims 1 through 6.  Carroll's petition is without merit.

An appropriate order will enter this day.  The Clerk is directed to send copies of this memorandum opinion and accompanying order to petitioner and to counsel of record for respondent.  Further, concluding that petitioner has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(1), a certificate of appealability is **DENIED**.

**ENTER:** This __2nd__ day of August, 2018.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE